UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 3:15-CR-00064-LRH-CWH |
| v. | |
| JOSE ISAIAS CABRERA, | ORDER |
| Defendant. | |

Before the court is defendant Jose Isaias Cabrera's joinder (ECF No. 41)[1] to former co-defendant Navarro-Sanchez's motion to suppress (ECF No. 36). The United States filed a response (ECF No. 43), to which Cabrera replied (ECF No. 97). With the court's leave, the United States also filed a surreply. ECF No. 98.

**I.   Background**

Cabrera is charged by indictment with multiple counts of Possession with Intent to Distribute under 21 U.S.C. § 841(a)(1). ECF No. 1. His former co-defendants, Jamie Navarro-Sanchez and Emmanuel Navarro, were charged with several of the same counts and, pursuant to a plea agreement with the United States, eventually pled guilty. ECF Nos. 71–72.

Both the charges and instant motion stem from a July 4, 2015, traffic stop and search of an Audi sedan driven by Cabrera. The on-scene search revealed a duffel bag inside the car filled with approximately 250 grams of cocaine, and a later inventory search revealed five pounds of

---

[1] This citation refers to the court's docket number.

methamphetamine hidden inside the car's rear tail light. ECF No. 43 at 4–5. The stop was initiated in Reno, Nevada, by a Sparks Police Department ("SPD") officer and two Washoe County Sheriff's Office ("WCSO") deputies. ECF No. 43. at 3. The officer and deputies conducted the stop and search at the request of SPD Detective James Ahdunko, who was serving as a task-force officer with the Drug Enforcement Agency ("DEA") at the time. ECF No. 43 at 3; ECF No. 43-1 at 10.

The stop was the result of the DEA's investigation of a suspected drug-trafficking organization in the Reno area. On June 2, 2015, a month before the stop, a DEA confidential source ("CS") met with non-party Genaro Guerra-Arellano in order to purchase methamphetamine. ECF No. 43 at 2. During the meeting, Guerra-Arellano called former co-defendant Navarro[2] from his cellphone to inform Navarro that they could begin the sale. Investigators were surveilling Navarro at the time and observed him enter the same Audi sedan that Cabrera drove a month later during the July 4 stop and search. Navarro drove the Audi to meet Guerra-Arellano and the CS in order to deliver the drugs. After Navarro arrived, Guerra-Arellano sold the CS several grams of methamphetamine.

Three weeks later, on June 23, 2015, investigators obtained a state warrant authorizing them to install a GPS tracking device on the aforementioned Audi. ECF No. 43 at 2. Detective Ahdunko provided an affidavit for the warrant application that described the June 2 drug transaction. *See* ECF No. 43-1 at 10. He averred that he was requesting the ability to track the Audi due to it being used to deliver the methamphetamine sold to the CS. *Id*. at 14.[3] Several days after the warrant was issued, officers installed a GPS tracking device on the Audi.

On July 2, 2015, at approximately 5:22 p.m., the tracking device revealed that the Audi was driving westward from Reno on Interstate-80 and crossed into California. ECF No. 43 at 3.

---

[2] Detective Ahdunko's affidavit refers to the driver of the Audi and supplier of the drugs as Jesus Rodriquez. However, a later DEA report reveals that investigators reviewed photos of the June 2 drug sale and identified the driver-supplier as Navarro. ECF No. 43 at 7 n. 4; ECF No. 43-1 at 2.

[3] Throughout Detective Ahdunko's affidavit and the original motion to suppress, the Audi sedan is commonly referred to as "Subject Vehicle #6" or "SV-6." *See* ECF No. 43-1 at 12.

1   Nearly nine hours later, at approximately 2:15 a.m. on July 3, the Audi stopped in Glendora in
2   Los Angeles County, California. At 8:00 a.m. that same morning, the Audi began driving again,
3   making several stops in Riverside, California, and neighboring cities. At around 7:25 p.m. that
4   day, the Audi left Pasadena, traveling northward en route back to Reno.
5         At approximately 4:05 a.m. on July 4, a DEA task-force officer observed the Audi
6   traveling eastbound on Interstate-80. He followed the Audi and observed that it was traveling
7   below the sixty-five mph speed limit—at times fifteen mph below the limit. ECF No. 43 at 3.
8   Shortly thereafter, Detective Ahdunko directed the SPD officer and WCSO deputies to initiate
9   the traffic stop of the Audi, which they executed at approximately 4:45 a.m.
10        At the time of the stop, four individuals were in the Audi, including Cabrera, who was
11  driving, and former co-defendant Navarro-Sanchez. ECF No. 43 at 4. No one in the car had a
12  valid driver's license. The SPD officer deployed his trained drug-sniffing dog, who alerted the
13  officer to the presence of controlled substances. The subsequent on-scene search of the Audi and
14  later inventory search revealed the above-mentioned cocaine and methamphetamine.
15        Former co-defendant Navarro-Sanchez moved to suppress evidence of the drugs found in
16  the Audi, arguing that the officers lacked probable cause to conduct the search. ECF No. 36.
17  Cabrera joined the motion. ECF No. 41. But because Navarro-Sanchez eventually pled guilty, his
18  motion to suppress was denied as moot. ECF No. 72. Cabrera's joinder to this motion, however,
19  was never addressed, and he never filed a reply to the United States' response. Cabrera obtained
20  new counsel who eventually moved for leave to either file a new motion to suppress or to file a
21  reply to the United States' opposition to the original motion. ECF No. 93. The court determined
22  that the latter option was most appropriate and also granted the United States leave to file a sur-
23  reply. ECF No. 95.
24        After examining the now-completed briefing, the court finds that the facts are generally
25  undisputed and that an evidentiary hearing is therefore unnecessary.
26  **II.   Legal standard**
27        The Fourth Amendment protects individuals against unreasonable searches and seizures.
28  U.S. Const. amend. IV. Any evidence resulting from an unconstitutional search or seizure cannot

be admitted as evidence against the victim of the search, and therefore must be suppressed. *See Wong Sun v. United States*, 371 U.S. 471 (1963). Warrantless searches "are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). "The burden of proving that a warrantless search or seizure falls within an exception to the warrant requirement is on the government." *United States v. Scott*, 705 F.3d 410, 416 (9th Cir. 2012).

### III.   Discussion

The United States argues that its warrantless search was permissible under the automobile exception.[4] This exception allows the police to search an "automobile and the containers within it where they have probable cause to believe contraband or evidence is contained." *California v. Acevedo*, 500 U.S. 565, 580 (1991). "[P]robable cause exists if 'there is a fair probability that contraband or evidence of a crime will be found in a particular place,' based on the totality of circumstances." *Dawson v. City of Seattle*, 435 F.3d 1054, 1062 (9th Cir. 2006) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

Cabrera argues that the police lacked probable cause to stop and search the Audi sedan on July 4, 2015. He also challenges the state warrant that authorized the DEA task force to place the GPS tracking device on the Audi. Because the tracking data is a key part of the United States' argument that probable cause existed to stop and search the Audi, the court will first address the warrant's validity.

### A.   The warrant for the GPS tracking device

Cabrera argues that there was no probable cause to support the tracking-device warrant and that the state magistrate who issued it did not provide an independent review of the warrant application. ECF No. 36 at 13. To support this assertion, Cabrera attempts to portray the Audi's

---

[4] The United States' surreply does not respond to Cabrera's arguments or elaborate on the government's arguments in its initial response. Instead, the surreply raises two new arguments: (1) that Cabrera lacks standing to challenge the tracking-device warrant and (2) that the applicable standard in this case is reasonable suspicion rather than probable cause. ECF No. 98. However, the court granted the United States leave to file a surreply in order to respond to any new arguments raised in Cabrera's reply. The United States had the opportunity to assert these arguments in its original opposition but failed to do so. The court will therefore not consider the United States' surreply and will only address the arguments found in its original response.

role in the DEA's investigation as minimal, arguing that it only appeared once during the ninety-day investigation. *Id*. at 12, 14. He also highlights the fact that the warrant application misidentified the individual driving the Audi to the June 2 drug sale as Jesus Rodriquez, contending that Detective Ahdunko attempted to mislead the magistrate by using a fictitious name to identify the allegedly unknown driver. *Id*. at 14. Finally, Cabrera argues that the warrant was based on stale information because it was issued three weeks after the drug sale.

In ruling on a warrant application, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [her] . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Gates*, 462 U.S. at 238–39 (internal quotation marks, ellipses, and brackets omitted).

Moreover, the "[i]nformation offered to support a search warrant application becomes stale when enough time has elapsed such that there is no longer sufficient basis to believe that the items to be seized are still on the premises." *United States v. Grant*, 682 F.3d 827, 835 (9th Cir. 2012) (citation omitted). "The mere lapse of substantial amounts of time is not controlling in a question of staleness." *United States v. Dozier*, 844 F.2d 701, 707 (9th Cir. 1988). However, "[w]ith respect to drug trafficking, probable cause may continue for several weeks, if not months, of the last reported instance of suspect activity." *United States v. Angulo-Lopez*, 791 F.2d 1394, 1399 (9th Cir. 1986).

The court finds that Cabrera's challenges to the tracking-device warrant are without merit. His assertion that the issuing magistrate did not perform a neutral review of the warrant application is conclusory. To the contrary, the application included Detective Ahdunko's detailed affidavit, which described the Audi leaving a residence already under DEA surveillance as part of a drug-trafficking investigation and delivering drugs to a pre-arranged sale with a CS. Any initial misidentification of the vehicle's driver does not undermine these facts. The affidavit therefore establishes that there was a "substantial basis" for the magistrate's probable-cause determination regarding the tracking device.

Additionally, the facts included in the warrant application were not stale under these circumstances. Cabrera argues that the warrant was issued based on the Audi's involvement in only one drug transaction. He contends that the alleged illegal activity therefore lacked "a continuous nature," a factor the Ninth Circuit has addressed in other staleness challenges. ECF No. 97 at 3 (citing *United States v. Landis*, 726 F.2d 540, 542 (9th Cir. 1984)). However, this argument ignores the reality that the DEA task force's desire to track the Audi was part of a larger investigation of the suspected drug-trafficking organization. *See* ECF No. 43 at 6 n. 2. After all, investigators were already surveilling Navarro and/or his residence at the time that he drove the Audi to the drug sale.

And, as Detective Ahdunko's affidavit made clear, the DEA task force sought the warrant in order to obtain further evidence of the drug-tracking organization's on-going criminal activity. *See* ECF No. 43-1 at 15. Because the Audi was used in the June 2 sale, there was a sufficient basis to believe that tracking its movements would reveal further evidence of drug trafficking.

Accordingly, the warrant authorizing the GPS tracking device was not defective, and the court will consider the evidence it gathered in determining whether probable cause supported the July 4 stop and search.

### B. The automobile exception

The United States argues that the following facts establish that probable cause existed at the time law-enforcement officers stopped and searched the Audi:

> (a) the travel to the Los Angeles area from Reno, and in such a quick turnaround—specifically, arriving at its destination after 2 a.m. on July 3, and the vehicle is on the move 6 hours after arrival, at 8 a.m., in the greater Los Angeles area, with brief stops in the Riverside area, known by investigators to be a drug-source city, or "hub," where drugs have been known to be distributed out of; (b) travel in the early morning hours on July 4, according to the GPS data, when law enforcement is unlikely to be on patrol or even working; (c) the slow speed of the Audi driven by defendant Cabrera on I-80 once it was being followed, considered with the Audi's use in a drug sale on June 2 . . . .

ECF No. 43 at 8. The United States contends that these facts established probable cause that this less than thirty-six-hour round trip to southern California from Reno, Nevada was a "drug run." *Id*. at 12.

Conversely, Cabrera argues that this trip occurred over the Independence Day holiday weekend, and "there is no indication that the vehicle was not stopping at friends and families' homes." ECF No. 36 at 9. He similarly isolates other facts underlying the United States' argument, arguing that no one component establishes probable cause. *Id*. at 8–9; ECF No. 97 at 5.

The court, however, must examine the totality of the circumstances in analyzing probable cause and, in this case, finds that there was probable cause to stop and search the Audi sedan driven by Cabrera on July 4. When the DEA task force began tracking the vehicle's journey to southern California on the evening of July 2, the task force knew the Audi had been involved in at least one drug transaction and suspected its involvement in on-going trafficking—as evidenced by the warrant authorizing the GPS tracking device. Moreover, the court agrees that the nature of the trip provided the task force probable cause that the trip's purpose was to acquire drugs in southern California and that these drugs would therefore be found in the vehicle. The Audi drove over nine hours to arrive in southern California in the middle of the night, only to leave less than six hours later, making several short stops in an area that investigators knew was a "hub" for acquiring drugs, and then traveling back to Reno in the middle of the night.

While it is possible that this trip was, as Cabrera argues, made to visit friends over a holiday weekend, this explanation is implausible. This argument also implies that law-enforcement officers must be *certain* that they will find evidence of a crime in order to satisfy the probable-cause requirement. However, the Fourth Amendment only requires that "there is a 'fair probability that contraband or evidence of a crime will be found in a particular place,' based on the totality of circumstances." *Dawson*, 435 F.3d at 1062 (quoting *Gates*, 462 U.S. at 238).

As discussed above, the totality of the circumstances established that there was at least a fair probability that drugs would be found in the Audi on its return trip to Reno on July 4. And because Detective Ahdunko was aware of the facts establishing probable cause and requested that the SPD officer and WCSO deputies conduct the stop and search, his knowledge was imputed to these law-enforcement officers through the collective-knowledge doctrine. *United States v. Ramirez*, 473 F.3d 1026, 1037 (9th Cir. 2007) ("Where one officer knows facts

7

constituting . . . probable cause (sufficient to justify action under an exception to the warrant requirement), and he communicates an appropriate order or request, another officer may conduct a warrantless stop, search, or arrest without violating the Fourth Amendment.").

Accordingly, the automobile exception to the warrant requirement is satisfied, and the court will deny Cabrera's joinder to the original motion to suppress.

**IV.   Conclusion**

IT IS THEREFORE ORDERED that defendant Jose Isaias Cabrera's joinder (ECF No. 41) to the original motion to suppress (ECF No. 36) is DENIED.

IT IS SO ORDERED.

DATED this 14th day of November, 2016.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE